## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RANDAL L. WISE, | : | |
| | : | Case No. 2:21-cv-10168 (BRM) (AME) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Randal L. Wise's ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff is a *pro se* federal pretrial detainee. Based on his affidavit of indigence (ECF No. 1-1), the Court previously granted him leave to proceed *in forma pauperis* and ordered the Clerk of Court to file the Complaint. (ECF No. 2.) Plaintiff's Complaint raises various claims arising out of alleged violations of his speedy trial rights resulting from this Court's COVID-19 related standing orders, as well as various restrictive jail conditions claims, against the Unites States, the United States Department of Justice, the United States Marshals Service, the United States District Court for the District of New Jersey, Chief Judge Freda Wolfson, Governor Phil Murphy, Essex County, Director Alfaro Ortiz, Warden Guy Cirillo, and CFG Medical Services.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Complaint is **DISMISSED** in its entirety.

# I. BACKGROUND

Plaintiff alleges he is a federal pretrial detainee, housed at the Essex County Correctional Facility, in Newark, New Jersey. Plaintiff's Complaint[1] lists various federal and state law claims. Plaintiff alleges Chief Judge Wolfson and the Government violated his speedy trial rights through Chief Judge Wolfson's issuance of COVID-19 pandemic related standing orders. (ECF No. 1, at 6-9.) In those orders, Chief Judge Wolfson held that the pandemic warranted the exclusion of various periods of time from the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). (*See, e.g.*, Standing Order 20-02, at ¶ 6.)

Plaintiff also claims Governor Murphy issued "Covid-19 emergency orders that were used by defendants to deprive plaintiff of constitutional rights." (ECF No. 1, at 5.) Plaintiff asserts Director Ortiz issued unspecified "emergency declarations." (*Id.*) Plaintiff also alleges this Court, and the United States employ some of the Defendants and should be responsible based on that employment and that the Defendants conspired to deprive Plaintiff of his rights. Plaintiff also complains about various pandemic related restrictions at the jail such as limited visitation, religious services, discovery access, legal research time, and medical care, as well as slow mail, lockdowns, extreme quarantines, and a lack of access to attorneys. (*Id.* at 9.)

Plaintiff's Complaint lacks specificity. The Complaint states only: (1) Chief Judge Wolfson issued the standing orders Plaintiff believes violated his Speedy Trial rights; (2) Governor Murphy issued unspecified "Covid-19 emergency orders"; and (3) Director Ortiz issued unspecified

---

[1] This Complaint is one of numerous, nearly identical complaints and amended complaints, from pretrial detainees at the Essex County Correctional Facility, seeking to proceed as a class action. *See, e.g., McClain v. United States*, No. 21-4997, 2021 WL 2224270, at *1 (D.N.J. June 2, 2021); *Middlebrooks v. United States*, No. 21-9225, 2021 WL 2224308, at *1 (D.N.J. June 2, 2021). In styling the complaints as a class action, the plaintiffs in these cases have failed to include any information regarding their personal, individual circumstances.

"emergency declarations." The Complaint fails to delineate which Defendants were involved in which alleged violations of his rights. Plaintiff does not explain the supposed conspiracy he alleges deprived him of his rights. Additionally, Plaintiff requests to proceed on a class action basis; however, he does not provide any specific information about how his rights were violated, as opposed to general allegations of restrictive conditions of confinement imposed on detainees at Essex County Correctional Facility. (*Id.* at 5-34.)

In terms of relief, Plaintiff seeks monetary, injunctive, and declaratory relief. In particular, he seeks to vacate unspecified pandemic related orders and declarations and requests four days of jail credit for every day in detention "during the period of March 15, 2020 to present." (*Id.* at 19-20.)

## II. LEGAL STANDARD

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing

*Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

4

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), is the federal counterpart to 42 U.S.C. § 1983. *See Walker v. Zenk*, 323 F. App'x 144, 145 n.1 (3d Cir. 2009) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). To state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (discussing that *Bivens* created a right against federal officials parallel to § 1983's right to assert a claim against state officials); *see also Collins v. F.B.I.*, No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that Bivens actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other.").

## III. DISCUSSION

### A. Immune Defendants

The Court begins with addressing immunity, because it appears Plaintiff has sued several Defendants who are immune for suit.

#### 1. The United States, the United States Department of Justice, The United States Marshals Service, and the United States District Court for the District of New Jersey

"It is well-settled that the United States has sovereign immunity except where it consents to be sued." *Brobst v. United States*, 659 F. App'x 135, 136–37 (3d Cir. 2016) (*citing United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Stated differently, "the United States is not subject to suit for constitutional torts, including the civil rights claims Plaintiff seeks to raise, and is entitled to absolute sovereign immunity in this matter." *See, e.g., Edward Pittman, v. United States*, No. 21-10123, 2021 WL 2260518, at *2 (D.N.J. June 2, 2021) (footnote omitted). Sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress

5

has specifically waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (finding that sovereign immunity bars suit against the United States either for damages or for injunctive relief requiring government action). Indeed, "[a]n action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007).

Here, the United States is entitled to sovereign immunity and has not waived said immunity. *See Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979) (finding sovereign immunity bars claims against the United States and its federal agencies and officials, unless the United States explicitly waives its immunity.) As such, Plaintiff's claims against the United States are **DISMISSED WITH PREJUDICE**.

Likewise, the United States Department of Justice, the United States Marshals Service, and the United States District Court for the District of New Jersey are immune from suit in this matter because they have not explicitly waived sovereign immunity. *See, e.g., Hindes v. F.D.I.C.*, 137 F.3d 148, 158-59 (3d Cir. 1998) (finding that federal governmental entities are not "persons" subject to suit in a federal civil rights matter); *see also Gary v. Gardner*, 445 F. App'x 466–67 (3d Cir. 2011) (finding that "the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity); *Hill v. United States*, No. 21-03872, 2021 WL 3879101, at *3 (D.N.J. Aug. 30, 2021); *Gamble v. United States Dist. Ct. of Rhode Island*, No. 18-778, 2019 WL 1301727, at *2 (D. Del. Mar. 21, 2019) (finding District Court immune from suit). These Defendants have not explicitly waived sovereign immunity; therefore, they are immune from suit and this Court lacks subject matter jurisdiction over the claims against them.

*Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999) ("Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States.") Consequently, Plaintiff's claims against the United States Department of Justice, the United States Marshals Service, and the United States District Court for the District of New Jersey are **DISMISSED WITH PREJUDICE**.

### 2. *Chief Judge Wolfson*

Plaintiff raises claims against Chief Judge Wolfson based on her issuance of the COVID-19 standing orders and those orders' exclusion of time under the Speedy Trial Act, in light of the pandemic.

Under the doctrine of judicial immunity, a judicial officer has absolute immunity from suit for action taken in his or her judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles*, 502 U.S. at 12). The doctrine of judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). When a judge has acted in his or her judicial capacity, as opposed to an executive or administrative capacity, he or she is entitled to absolute judicial immunity from damage claims even when his or her action was erroneous, done maliciously, or exceeded his or her authority. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

Whether a judicial officer has acted in his or her judicial capacity in any particular case is a functional inquiry. *See Forrester v. White*, 484 U.S. 219, 227 (1998) ("[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.") Therefore, a judge is not afforded judicial immunity for those actions the judge has taken in an administrative or executive capacity. *See id.* at 229-30 (holding that a state court judge's act of

demoting a probation officer was done in his administrative capacity, and thus, the judge was not immune from suit); *Supreme Court of Va. v. Consumers Union of the United States*, 446 U.S. 719, 737-38 (1980) (holding that "immunity does not shield the Virginia Court and its chief justice from suit" when the judge was acting as a prosecutor to enforce the Bar Code).

Chief Judge Wolfson's standing orders were issued in a judicial rather than administrative capacity. The standing orders addressed the effect of the COVID-19 pandemic on the speedy trial rights of the pretrial detainees in this District. (*See, e.g.*, Standing Order 20-02, at ¶ 6.) Chief Judge Wolfson addressed a legal, i.e., judicial, issue before her. Other judges in this District have similarly found these orders were judicial in nature. *See Hill*, 2021 WL 3879101, at *3 ("Those orders were clearly issued in a judicial rather than administrative capacity."); *Tiedeman v. United States of America*, No. 21-4326, 2021 WL 2224265, at *2 (D.N.J. June 2, 2021); *Majerska v. United States of America*, No. 21-4381, 2021 WL 4739602, at *3 (D.N.J. Oct. 12, 2021). Plaintiff's claims for monetary damages against Chief Judge Wolfson are **DISMISSED WITH PREJUDICE** because her standing orders were issued in a judicial capacity.

Chief Judge Wolfson is also immune from suit with respect to Plaintiff's requests for injunctive relief. Except in very limited circumstances, judges are immune from personal-capacity suits for injunctive relief. "In 1996, Congress amended 42 U.S.C. § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial official for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006) (citing 42 U.S.C. § 1983); *see also* 42 U.S.C. § 1983 (abrogating in part *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (which held that judicial immunity is not a bar to prospective injunctive relief against a judge acting in his or her judicial capacity)).

Plaintiff makes a conclusory statement that "[a] decree was violated[,] and declaratory relief was not made available." (E.C.F No. 1, at 2.) Plaintiff fails to submit what decree was violated. Plaintiff also explicitly seeks declaratory relief in this matter. (*Id.* at 19.) Plaintiff has failed to allege sufficient facts to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Plaintiff's claim for injunctive relief against Chief Judge Wolfson is **DISMISSED WITHOUT PREJUDICE** because Plaintiff has failed to plead Chief Judge Wolfson violated any declaratory decree or that declaratory relief is unavailable.

Plaintiff also seeks declaratory relief, requesting a "declaration" that various statutes and constitutional amendments were violated. (ECF No. 1, at 19.) "Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another." *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam); *see Andela v. Admini. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). While a plaintiff may request declaratory relief, he/she must show a likelihood of future injury, as declaratory judgment is an inappropriate remedy to proclaim liability for past actions. *Corliss*, 200 F. App'x at 84; *Gochin v. Thomas Jefferson Univ.*, Civ. A. No. 16-6153, 2017 WL 2152177, at *8 (E.D. Pa. May 17, 2017). Instead, declaratory relief is meant to "define legal rights and obligations" for future conduct between parties. *Id.*; *Rutkowitz v. Turner*, Civ. A. No. 17-6622, 2018 WL 3388306, at *5 (D.N.J. July 12, 2018).

Here, the non-monetary relief sought (i.e., a declaration that statutes and constitutional amendments were violated) is improper. Indeed, declaratory relief is only appropriate for future conduct, but here, relief is sought for alleged harm caused by past "violations." Plaintiff does not provide any facts regarding a future injury. More importantly, Plaintiff fails to provide any facts

9

regarding how the standing orders affected him personally and any future injury Plaintiff personally faces. As such, declaratory relief is improperly pled. Therefore, Plaintiff's claims for declaratory relief against Chief Judge Wolfson are **DISMISSED WITHOUT PREJUDICE**.[2]

### 3. *Governor Murphy*

Any claim for monetary relief Plaintiff attempt to raise against Governor Murphy in his official capacity is barred by the doctrine of sovereign immunity. The Eleventh Amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (internal quotation omitted). Accordingly, New Jersey state agencies "established in the Executive Branch of State Government" qualify for Eleventh Amendment sovereign immunity, "regardless of the relief sought," unless an exception to the immunity rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation omitted). Those exceptions apply when: (1) Congress abrogates the immunity, (2) a state waives immunity, or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

---

[2] Although Plaintiff has failed to properly plead a claim for declaratory relief, this Court also "concurs with other courts throughout the District of New Jersey and finds that Chief Judge Wolfson's standing orders, issued in response to the COVID-19 pandemic" are "supported by detailed findings, and provide[ ] a sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment." *United States v. Hafner*, No. 19-790, 2021 WL 1873560, at *3 (D.N.J. May 10, 2021) (internal quotation marks omitted) (citing *United States v. Kaetz*, 2021 WL 37925, at *8 n.8 (D.N.J. Jan. 4, 2021); *United States v. Chu*, No. 19-678, 2021 WL 879905, at *4). Chief Judge Wolfson conducted an appropriate balancing test under the Speedy Trial Act. *See* Standing Order 21-04. "The Chief Judge specifically acknowledged the importance of the right to a speedy and public trial and balanced the interests of defendants and the public in that right against the compelling public health and safety issues arising out of the COVID-19 pandemic." *Hafner*, 2021 WL 1873560, at *3; *Chu*, 2021 WL 879905, at *3.

Governor Murphy is a state official sued in his official capacity. (ECF No. 1, at 2.) Accordingly, he is entitled to sovereign immunity from Plaintiff's claim for monetary damages. Plaintiff's claims against Governor Murphy for monetary damages are **DISMISSED WITH PREJUDICE**. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

### B.  Federal Tort Claims Act

Plaintiff also raises a Federal Tort Claims Act ("FTCA") claim. (ECF No. 1, at 16.) "The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 1346(b)(1)). "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court." *Lomando v. United States*, 667 F.3d 363, 372 (3d Cir. 2011) (quoting *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 362 (3d Cir. 2001); *see also CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008) ("The cause of action in an FTCA claim . . . must come from state tort law.")) "[A]s part of the Prison Litigation Reform Act . . . , section 1346(b)(2) of the FTCA precludes inmate tort actions against the United States for 'mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .'" *West v. United States*, 729 F. App'x 145, 148–49 (3d Cir. 2018) (quoting 28 U.S.C. § 1346(b)(2)), *reh'g denied* (May 9, 2018) (per curiam).

A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457. "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States['] consent to be sued, they are jurisdictional." *Id.* An agency's final denial of the tort claim is a jurisdictional requirement. *Lightfoot v. United States*, 564 F.3d

11

625, 627 (3d Cir. 2009). These requirements cannot be waived. *See, e.g., White–Squire*, 592 F.3d at 457. In other words, if a plaintiff has not complied with the FTCA's pleading requirements, "a district court has no subject matter jurisdiction over the claim." *Hardie v. United States*, 501 F. Supp. 3d 152, 158 (E.D.N.Y. 2020), aff'd, No. 21-106, 2021 WL 4427852 (2d Cir. Sept. 27, 2021); *see also Washington v. Thomas*, No. 16-0992, 2017 WL 36272, at *3 n.3 (D.N.J. Jan. 4, 2017); *Hoffenberg v. United States*, No. 10-2788, 2012 WL 379934, at *4 (D.N.J. Feb. 6, 2012).

Here, the Complaint fails to make any reference to a notice of tort claim, a demand for sum certain, or that Plaintiff has otherwise exhausted his FTCA claim. Accordingly, Plaintiff's FTCA claim against the United States "for failure to sufficiently allege the jurisdictional basis" for his claim are **DISMISSED WITHOUT PREJUDICE**. *Hoffenberg*, 2012 WL 379934, at *4.

### C. Supervisory Liability

Plaintiff appears to claim that Defendants Governor Murphy, Essex County, Director Ortiz, Warden Cirillo, and CFG Medical Services are liable as supervisors. Plaintiff fails to plead sufficient facts to indicate these Defendants' personal involvement in the alleged wrongs.

Defendants in a § 1983 case may not be held liable solely on the basis of a *respondeat superior* theory of liability premised on their vicarious responsibility for the actions of their subordinates. *See Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Rather, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207–08. Generally, a plaintiff seeking to name supervisors as defendants must show each supervisor's participation in the alleged wrongs by pleading either that the supervisor's

> establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's

12

rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct.

*Doe v. New Jersey Dep't of Corr.*, Civ. No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (finding a § 1983 Plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable").

In the case of a municipal defendant or outside contractor, such as Defendants Essex County and CFG Medical Services, a plaintiff must instead plead that the municipality or contractor adopted a policy, practice, or custom which was ultimately responsible for the alleged violation. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). A municipal or corporate policy, practice, or custom must therefore be the "moving force" behind the alleged constitutional violation for a plaintiff to successfully plead a plausible claim for relief as to such a defendant. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010).

In this matter, Plaintiff fails to plead facts to show Defendants Governor Murphy, Essex County, Director Ortiz, Warden Cirillo and CFG Medical Services personally involved in actions that allegedly violated Plaintiff's rights. Plaintiff makes a single brief reference to unspecified policies and customs. (ECF No. 1, at 19.) Plaintiff fails to explain what policies he is referring to or how they allegedly violated any of his personal rights. Plaintiff also submits that Governor Murphy issued "Covid-19 emergency orders," and that Director Ortiz issued unspecified "emergency declarations." (*Id.* at 5.) Plaintiff again fails to explain which exact orders he is challenging, how they caused specific violations of constitutional rights, or how Plaintiff himself, as opposed to a generalized class of persons, was harmed. Defendants Governor Murphy, Essex

13

County, Director Ortiz, Warden Cirillo and CFG Medical Services are not liable simply for being superiors, as government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676. Plaintiff's bare conclusions fail to plead a cognizable claim for relief against these Defendants. *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing *Iqbal*, 556 U.S. at 678). Plaintiff's claims against Defendants Governor Murphy, Essex County, Director Ortiz, Warden Cirillo and CFG Medical Services are **DISMISSED WITHOUT PREJUDICE**.

### D.  Group Pleadings

Plaintiff raises various claims under 42 U.S.C. §§ 1983, 1985, 1986, and the Administrative Procedures Act, 5 U.S.C. § 702. Throughout the Complaint, Plaintiff raises claims regarding prison conditions, such as a lack of access to dental care, limited access to medical services, limited access to counsel, isolation and lack of family visits. (ECF No. 1, at 12–14.) Plaintiff also alleges Defendants conspired to deny him of his constitutional rights. (*Id.* at 15.) Plaintiff fails to delineate which Defendants are responsible for which action. Plaintiff alleges that the Defendants in general are responsible for these wrongs.

This type of pleading against "defendants" collectively leaves defendants unable to discern which allegations apply to any of them individually. This group pleading is prohibited. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297 at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012) (finding a dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants)). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied

different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 WL 1163751 at * 3 (D.N.J. Mar. 19, 2013). A complaint that contains "impermissibly vague group pleading" will be dismissed. *Id.* at *11, 2013 WL 1163751. Without knowing exactly what wrongful conduct they are alleged to have engaged in, the individuals Defendants have not been given fair notice of the allegations against them. *See Twombly*, 550 U.S. at 555 (stating that Rule 8(a)(2) requires a complaint to "give the defendant fair notice of what the claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Complaint states only that Chief Judge Wolfson issued the standing orders, Governor Murphy issued unspecified "Covid-19 emergency orders," and Director Ortiz issued unspecified "emergency declarations." Plaintiff fails to plead any specific acts that can be attributed to any specific Defendant. (*See generally* ECF No. 1.) Plaintiff does not plead how he was personally affected by any specific Defendants actions. Plaintiff makes conclusory statements that Defendants generally are responsible for the alleged wrongs. As to Governor Murphy and Director Ortiz, "Plaintiff does not identify the orders or state how they caused the specific rights violations he wishes to challenge, or specify how any decisions, policies, practices, . . . caused *him* harm." *Hill*, 2021 WL 3879101, at *4.

Similarly, Plaintiff's conspiracy claim does not allege specific facts. Rather, Plaintiff merely asserts a conspiracy existed. To state a conspiracy claim, a plaintiff must allege some factual basis to support an agreement between the conspirators to violate the plaintiff's rights and concerted action by the conspirators. *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("[T]he bare allegation of an agreement is insufficient to sustain a conspiracy claim . . . ."); *Desposito v. New Jersey*, No. 14-

1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (showing that two parties' actions had the same result insufficient to show conspiracy, conspiracy requires showing of actual agreement and concerted action). Plaintiff fails to plead facts of an actual agreement or concerted action. As such, he has failed to plead a conspiracy.

These claims fail to sufficiently allege what Plaintiff's claims are against each Defendant and fail to provide fair notice of the grounds on which he intends to rest his claims. Fed. R. Civ. P. 8. Stated differently, such claims "would not provide any meaningful opportunity for the [remaining] Defendants to decipher or answer the vague allegations levied against them." *Johnson v. Koehler*, No. 18-807, 2019 WL 1231679, at *3 (D.N.J. March 15, 2019); *see Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, 1986, and 5 U.S.C. § 702 are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### E. Racketeer Influenced and Corrupt Organizations Act

Plaintiff also raises claims against all Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d). (ECF No. 1, at 3.) Section 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]." 18 U.S.C. § 1962(d). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted).

"In order to have standing to litigate a civil RICO claim, a plaintiff must show that she suffered an injury to her business or property and that the injury was proximately caused by the defendant's racketeering activities." *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (per curiam). The injury to business or property element requires "proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). "[I]n construing the federal RICO law, [the Third] Circuit has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio*, 221 F.3d at 492.)

Here, Plaintiff fails to adequately plead the elements required for a RICO claim. Plaintiff's RICO allegation states only that Defendants "acted as a criminal enterprise that is run as a business with a pattern of illicit conduct exceeding two predicate acts that equates to fraud, corruption, violence and activity in furtherance of human trafficking and slavery." (ECF No. 1, at 16.) The Complaint does not specify how the Defendants formed a "criminal enterprise" or what predicate acts they took part in. Additionally, Plaintiff has failed to allege a "concrete financial loss." The Complaint only raises allegations of constitutional violations related to personal injury, which are not proper RICO losses. *Maio*, 221 F.3d at 492. Plaintiff's RICO claims offers only conclusory allegation, which fail to state a claim for relief. *Iqbal*, 556 U.S. at 678. Therefore, Plaintiff's RICO claims are **DISMISSED WITHOUT PREJUDICE** because Plaintiff has failed to state claim in which relief can be granted.

### F.  Religious Freedom Restoration Act and Religious Land Use and Institutionalized Persons Act

Plaintiff also asserts claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.,* and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. The RFRA "prohibits the Federal Government from taking any actions that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling governmental interest." *Burnell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690-91 (2014). The RLUIPA, among other things, "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting *Gonzales v. O Centro Espirita Beneficente Unio Vegetal*, 546 U.S. 418, 436 (2006)). "Congress enacted RLUIPA and its sister statute, . . . RFRA . . . 'in order to provide very broad protection for religious liberty.'" *Holt*, 574 U.S. at 356 (quoting *Burwell*, 573 U.S. at 693). RFRA and RLUIPA are similar, with claims under RLUIPA being limited to "only land use regulations . . . and the religious rights of institutionalized persons." *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 261 (3d Cir. 2007) (internal citations omitted).

To state a claim under either statute, "Plaintiff must allege facts that indicate that the federal government substantially burdened a sincerely held religious belief." *See, e.g., Martinez v. United States*, No. 21-4336, 2021 WL 2224268, at *4 (D.N.J. June 2, 2021) (citing *Holt*, 574 U.S. at 360–61); *Gambino v. Cassano*, No. 17-0830, 2021 WL 1186794, at *5 (D.N.J. Mar. 30, 2021). Under the RLUIPA,

> a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

Here, Plaintiff does not allege facts to support an RLUIPA claim. The Complaint only submits that the COVID-19 related jail restrictions are interfering with religious practices. (ECF

No. 1, at 10, 13.) Plaintiff alleges no facts regarding his own religious beliefs. As such, Plaintiff's

RLUIPA and RFRA claims are **DISMISSED WITHOUT PREJUDICE**.

Finally, as no federal claims remain in this case, the Court declines to exercise

supplemental jurisdiction over Plaintiff's remaining state law claims, including any claims under

the New Jersey Civil Rights Act. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123

(3d Cir. 2000)

### G. Request for Jail Credits

In his Complaint, Plaintiff seeks four extra jail credits for every day spent in detention

during the pandemic for unspecified detainees. (ECF No. 1, at 20.) Detainees may not, however,

use a civil rights complaint to "challenge the fact or length of [their] detention." *Pittman*, 2021

WL 2260518, at *2. Rather, detainees must raise any claim "which would impugn or otherwise

overturn the fact or length of . . . detention . . . via a criminal motion or a habeas petition." *Id.*

(citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Edwards v. Balisok*, 520 U.S. 641, 643–

48 (1997)). As a result, Plaintiff's request for additional jail credits is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's claims against the United States, the United

States Department of Justice, the United States Marshals Service, the United States District Court

for the District of New Jersey, Chief Judge Wolfson for monetary relief, and Governor Murphy in

his official capacity for monetary relief are **DISMISSED WITH PREJUDICE**. The remainder

of Plaintiff's federal claims are **DISMISSED WITHOUT PREJUDICE**. The Court declines to

exercise supplemental jurisdiction over his state law claims. An appropriate Order follows.

Dated: November 17, 2021

/s/ Brian R. Martinotti
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE